## McLAUGHLIN *v.* McLAUGHLIN
### No. 2665
August 30, 1924.                    228 Pac. 305.

#### ON MOTION FOR ALLOWANCE

1. DIVORCE—$50 PER WEEK HELD NECESSARY FOR SUPPORT AND
MAINTENANCE OF WIFE PENDING FINAL DISPOSITION OF CAUSE.
In an action for divorce, $50 per week *held* necessary for
support and maintenance of wife pending final disposition of
cause by appellate court.

See 19 C. J. sec. 532, p. 223, n. 61; sec. 533, p. 224, n. 83.

APPEAL from Second Judicial District Court, Washoe
County; *Thomas F. Moran,* Judge.

Action by James McLaughlin against Belle Stanton
McLaughlin. Judgment for plaintiff, and defendant
appeals. On defendant's motion for allowance of cer-
tain sums to enable her to prosecute appeal. **Motion
granted.**

*Cooke, French & Stoddard,* for Appellant.
*Sardis Summerfield,* for Respondent.

## OPINION

By the Court, DUCKER, C. J.:

Appellant has perfected her appeal from an order of
the Second judicial district court denying her motion for
a new trial, and has made a motion in this court for the
allowance of certain sums to enable her to prosecute
said appeal. The notice of motion included a statement
of amounts necessary for estimated expense of three
copies of transcription of oral testimony adduced and
depositions admitted in evidence on the trial of the
action; for fees of her counsel on appeal; for paying
fees of the clerk of the supreme court and incidental
costs and expenses to be incurred in connection with the
taking of said appeal; and for paying $50 per week
(instead of and in lieu of $32 per week under the exist-
ing order of the trial court) for the support and mainte-
nance of defendant pending the final disposition of said
cause by this court, and which payments are to be

made weekly and to continue until terminated by law.

Upon the hearing of the motion counsel for the parties stated that all sums so claimed by appellant as necessary for the purposes mentioned had been agreed upon, except the sum of $50 per week for her support and maintenance. Consequently the controversy is limited to this item.

It appears from respondent's affidavit admitted on the hearing of the motion that the lower court decided he was entitled to a divorce; that he was worth not more than $40,000; that appellant was entitled to $20,000 as her portion of property; that the trial court withheld making a minute order granting a decree of divorce until the $20,000 was paid to the clerk of the court; that on February 25, 1924, respondent, in open court, tendered to appellant $19,712, being the sum of $20,000, less deductions therefrom at that time authorized by the orders of said court to be made, in full satisfaction of the judgment order in appellant's favor and against respondent; and that at that time and place appellant refused to accept the same. In his affidavit he avers that he is worth less than $40,000, the amount found by the court. Appellant, in her affidavit, states that respondent is worth very much in excess of $40,000, and asserts as her belief that he is worth one-half million of dollars, or more. What respondent is actually worth within these limitations has little or no bearing on the question as to what amount is necessary for her support and maintenance pending the determination of her appeal. Enough appears to show that he is able to pay the weekly amount claimed as necessary. The only question is: Is the sum of $50 per week necessary for her support and maintenance?

It appears from her affidavits that she is physically unable to earn money, and that she has no means other than such moneys as she is receiving from the respondent under the existing order of the court. That this sum is not sufficient for her support and maintenance is fairly shown from her affidavits, which are not contradicted in this respect, and under the showing made

we think that $50 per week is a proper sum to be allowed for such purposes.

As counsel for the parties have agreed upon the sums of $360, $750, and $40, respectively, for the expense of three copies of oral testimony adduced and depositions admitted in evidence on the trial of the action, for fees of appellant's counsel on appeal, and for paying fees of the clerk of the supreme court and incidental costs and expenses to be incurred in connection with the taking of said appeal, these sums are also ordered to be paid by respondent to appellant for the purposes mentioned.

In case the judgment for a divorce is not reversed on appeal, or money judgment in her favor is not substantially modified adversely to her, the sums allowed to her for her support and maintenance should be deducted from the amount paid to her in satisfaction of said judgment.

It is so ordered.

## ON MERITS

August 5, 1925.                    238 Pac. 402.

1. DIVORCE—IF SPOUSE USING MORPHINE IS GUILTY OF INDIGNITIES WHICH RENDER CONDITION OF INJURED SPOUSE INTOLERABLE, SUCH ACTS CONSTITUTE EXTREME CRUELTY, THOUGH NO PHYSICAL VIOLENCE INFLICTED.

Though habitual, excessive, and intemperate use of morphine standing alone does not constitute extreme cruelty, if spouse using drug is guilty of cruelties and indignities which render condition of injured spouse intolerable, ultimately destroying legitimate ends and objects of matrimony, such acts and conduct constitute extreme cruelty, although no physical or personal violence is inflicted, threatened, or apprehended.

2. DIVORCE—THERE IS NO INTERLOCUTORY DECREE OF DIVORCE IN NEVADA PRACTICE.

There is no interlocutory decree of divorce in Nevada practice.

3. DIVORCE—CAUSES OF ACTION IN COMPLAINT HELD NOT RES JUDICATA, BECAUSE OF INTERLOCUTORY DECREE OF DIVORCE IN COURT OF ANOTHER STATE, WHERE DEFENDANT HAD VOLUNTARILY AND WITH LEAVE OF COURT DISCONTINUED HER PETITION IN SUCH COURT.

Where, in action for divorce, it appeared that wife, suing for divorce in Rhode Island, had voluntarily and with leave of court discontinued suit after interlocutory decree for divorce, *held,* causes of action in husband's complaint were not res judicata, since wife's dismissal of divorce suit carried whole case out of court.

4. Witnesses—Exclusion of Cross-Examination of Plaintiff in Divorce Suit, as to Whether He Owned Property in State of Original Domicile, Held Error.

Where, in action for divorce, it appeared that plaintiff, in proceedings for divorce in Rhode Island shortly before coming to state, had sought decree of divorce, *held*, court erred in refusing to allow, on issue of plaintiff's domicile, cross-examination as to whether plaintiff owned property in Rhode Island and whether he had changed his bank account to Nevada.

See (1, 2, 3) 19 C. J. sec. 88, p. 49, n. 39; sec. 106, p. 56, n. 37 (new); sec. 376, p. 148, n. 30; sec. 402, p. 158, n. 80; sec. 457, p. 185, n. 6; (4) 22 C. J. sec. 297, p. 282, n. 58; 40 Cyc. p. 2492, n. 21.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by James McLaughlin against Belle Stanton McLaughlin. From an order denying defendant's motion for a new trial, she appeals. **Reversed and remanded. Petition for rehearing denied.**

*Cooke, French & Stoddard,* for Appellant:

Nearly every state recognizes cruelty as ground for divorce, but that morphinism is not cruelty is shown by fact that some states make drug habit, when it attains certain degree, separate and distinct ground for divorce. Keezer, Marriage and Divorce (2d ed.), 238; Burt v. Burt, 46 N. E. 622; 9 R. C. L. 343. 2 Schouler, Marriage and Divorce (6th ed.), sec. 1591; Young v. Young, 6 L. R. A. 548.

It cannot be said that Rhode Island decree on merits finding husband guilty of extreme cruelty and wife guiltless thereof was pursuant to any stipulation, however true it may be respecting award of moneys, etc. In any event, judgment rendered by consent operates as estoppel. 2 Black, Judgments (2d ed.), 772; 23 Cyc. 1134.

When no further action of court is required to determine rights of parties, judgment is final, though other orders are necessary to carry it into effect. Perkins v. Sierra etc. Co., 10 Nev. 414.

Interlocutory decree of divorce is final as to matters

adjudicated, though reserved or postponed questions may still be open. 2 Black (2d ed.), 773; 23 Cyc. 673; Newell v. Superior Court, 149 Pac. 999.

Rhode Island decree was rendered upon same facts as plaintiff asks Nevada court to pass upon. Full faith and credit shall be given to judicial proceedings of every other state. U. S. Const. art. IV, sec. 1.

Ruling on objection to evidence is deemed excepted to. 1915 Stats. 321.

*Sardis Summerfield,* for Respondent:

Scope of review by this court will be limited to assigned and argued alleged errors. Smith v. I. O. O. F. B. A., 46 Nev. 54.

Our statute provides as ground for divorce in laconic terms: "Sixth — Extreme cruelty in either party." Court have given negative, rather than affirmative definitions of extreme cruelty. Each case is left to be judged on its own facts. Kelly v. Kelly, 18 Nev. 56. Any character of misconduct which renders life of other miserable, though no personal violence is apprehended, is extreme cruelty. Reed v. Reed, 4 Nev. 395. Decisions of other states contrary to our own can have no weight.

Though evidence be conflicting, there is sufficient to support finding of appellant's desertion.

For judgment or decree to operate as res adjudicata it must have reached finality. Questions distinctly put in issue and determined are conclusively settled by final decree or judgment and cannot be further litigated between same parties. Vickers v. Vickers, 45 Nev. 281; On Petition for Rehearing, 285, quoting with approval Oklahoma v. Texas, 65 L. Ed. 475.

It is error to enter final decree against wish of petitioner. Court will require petitioner, within reasonable time, either to consent to entry of final decree or to withdraw petition. McLaughlin v. McLaughlin (R. I.), 117 Atl. 649. Appellant withdrew her petition in Rhode Island and thus entirely obliterated action, as much as if it had never been commenced. Rhode Island decree

was not even operative. Unless both parties are bound by the estoppel matter, neither is concluded thereby. Hughes v. Clarksville, 8 L. Ed. 430. Appellant cannot claim she is bound by Rhode Island interlocutory decree for reason its supreme court has held conclusively she is not. 117 Atl. 649.

Reed v. Reed, 4 Nev. 395, quoted by counsel holds that if conduct of offending spouse makes it probable that life of other will be rendered miserable though no personal violence is apprehended, *or* if there be reason to apprehend bodily harm, decree should be granted. Court reaffirmed this in Kapp v. District Court, 31 Nev. 451.

## OPINION

By the Court, SANDERS, J.:

This appeal is taken from an order denying the defendant's motion for new trial in an action for divorce, wherein James McLaughlin is plaintiff and Belle Stanton McLaughlin is defendant. We shall refer to the parties as they stood in the court below.

The history of the case is this: The parties were domiciled inhabitants of Rhode Island, residing at Cumberland Hill in that state. They were married in 1912, and the marriage relation was preserved until 1921, though the intervening years were filled with distressing incidents, minutely described in the pleadings and detailed by witnesses in a record consisting of about 1,000 pages of testimony. The record discloses that in March, 1921, Belle Stanton McLaughlin filed a petition in the superior court of Rhode Island, in and for the counties of Providence and Bristol, for divorce from bed and board for extreme cruelty, and for her husband's refusal and neglect to provide the petitioner with necessaries for her subsistence. James McLaughlin denied the charges and pleaded by cross-petition that the petitioner was an habitual, excessive, and intemperate user of morphine and prayed an absolute divorce. Under the statutes of Rhode Island, the habitual, excessive,

and intemperate use of opium, morphine, or chloral constitutes a separate and distinct cause for divorce from the bond of marriage. Pub. Laws R. I. 1902, chapter 971. The cause was heard on July 7, 1921, and further heard from time to time upon the original pleadings. On September 27, 1921, and before the trial was concluded, the parties entered into a stipulation in writing in which they expressed their willingness to settle the question of alimony without contest, subject, of course, to the decision of the Justice being favorable to the petitioner, and stipulated that the petitioner should be paid the sum of $20,000 in lieu of alimony and in lieu of dower and all claims and interest the petitioner might have in the estate or property of James McLaughlin. The stipulation was filed in the cause, and on the same day, to wit, September 27, 1921, James McLaughlin withdrew his cross-petition for divorce and Mrs. McLaughlin amended her petition and, as amended, prayed a divorce from the bond of marriage. On the same day the case was decided in favor of the petitioner and an interlocutory decree entered, divorcing the parties from the bond of marriage because of extreme cruelty, and for the neglect and refusal of James McLaughlin to provide the petitioner with necessaries for her subsistence. In the decree the Justice fixed the amount of alimony in accordance with the stipulation of the parties referred to in the decree. Under the statute of Rhode Island, such divorce cannot be "final and operative" until six months after the trial and decision. On March 22, 1922, before the expiration of six months from the entry of the decree, Mrs. McLaughlin filed notice of her withdrawal and discontinuance of the petition. The court refused to permit the petitioner to discontinue. On March 28, 1922, after the expiration of six months from the entry of said decree, James McLaughlin moved the court to enter a final decree divorcing the parties from the bond of marriage. Mrs. McLaughlin opposed the motion. On July 6, 1922, the supreme court, on the petition of Mrs. McLaughlin, issued a writ of prohibition against said superior court,

commanding it to refrain from entering a final decree upon the motion of James McLaughlin, contrary to the wish of the petitioner. See McLaughlin v. McLaughlin, 44 R. I. 429, 117 A. 649.

Thereafter, to wit, on September 26, 1922, Mrs. McLaughlin, with leave of said superior court, discontinued her petition for divorce. Within a few days thereafter James McLaughlin left the jurisdiction of said superior court and came to Reno, Washoe County, Nevada, arriving there on October 9, 1922. On April 11, 1923, he commenced this action against the defendant for divorce for extreme cruelty and for desertion, alleging residence in Washoe County for six months before the filing of the complaint. Summons and copy of the complaint were served personally on the defendant at her place of residence in Rhode Island, where she verified before a notary public an answer and cross-complaint. Thereafter the defendant came to Reno and filed an amended answer and cross-complaint in the cause.

The plaintiff for a first cause of action alleged, in substance, that shortly after the marriage the defendant began a course of conduct which rendered his condition intolerable; that the defendant at the time of the marriage, and without plaintiff's knowledge, was an habitual, excessive, and intemperate user of morphine; that the plaintiff at all times, and at large expense, endeavored to have the defendant cured of her drug habit, but without success. The complaint recites many cruelties and indignities practiced by the defendant upon the plaintiff which rendered his physical and mental condition intolerable and the marriage relation unbearable. For a second cause of action the plaintiff pleaded desertion and alleged that the defendant lived separate and apart from the plaintiff without his fault and without his consent and against his will. He alleged that there was no issue of the marriage and that there was no community property.

In her answer, the defendant denied all the allegations of the complaint in respect to cruelty and desertion, and specifically denied that she was a drug addict as alleged

in the complaint, and pleaded the divorce proceedings in the Rhode Island court and set up the interlocutory decree in favor of the defendant as a bar to plaintiff's action, and by way of cross-complaint charged plaintiff with extreme cruelty, and with neglect and refusal to provide the defendant with the common necessaries of life, and demanded judgment for separate maintenance and support, specifying many cruelties and indignities practiced by plaintiff upon the defendant.

The plaintiff interposed a demurrer to the answer, upon the ground that it did not state facts sufficient to create an estoppel nor facts sufficient to constitute a defense. The demurrer was overruled. The plaintiff for reply denied that the superior court of Rhode Island in the case of McLaughlin v. McLaughlin entered an interlocutory decree which created an estoppel in the nature of res adjudicata, and in this connection set up the stipulation entered into between the parties on the trial of the Rhode Island case and alleged that in consideration of said stipulation it was understood and agreed that the plaintiff would withdraw his cross-petition, and that in the event the case should be decided in favor of the defendant she would apply for and receive an absolute divorce at the expiration of six months from the entry of the decision, and further alleged in this connection that no decree had been entered in favor of the defendant in the Rhode Island case except by reason of and upon said stipulation.

Upon the trial of the case the defendant withdrew her claim for separate maintenance and support. After a hearing upon the pleadings and evidence, the trial judge decided that the plaintiff had established his causes of action by the preponderance of the evidence, but that no judgment for divorce, based upon findings, would be entered in his favor until plaintiff had deposited with the clerk of the court the sum of $20,000, an amount adjudged to be one-half the value of the plaintiff's entire property. The defendant moved for a new trial. Her motion was denied. Thereupon she appealed to this court from the order denying and overruling her said motion for new trial.

Nothing is said on appeal about the unusual decision as to the conditions upon which the decree in favor of the plaintiff would be entered. The errors assigned and relied upon for reversal of the order involve the discussion of these questions: First, was plaintiff a resident of Washoe County, domiciled there, when he brought this suit? Second, does the habitual, excessive, and intemperate use of morphine constitute extreme cruelty under our statute? Third, are the causes of action stated in the complaint res adjudicata by reason of the interlocutory decree of divorce rendered in favor of the defendant in the superior court of Rhode Island? Fourth, does the evidence support the complaint?

1. It will be observed from the history of the case that it presents some unusual features, and we shall reverse the order of discussion of the questions presented for decision by deferring for the last that of the plaintiff's residence in Washoe County. We are of opinion that the habitual, excessive, and intemperate use of morphine, standing alone, does not under our statute constitute extreme cruelty. The habitual use of such drug naturally results in an estrangement of affections, but it does not necessarily follow that its habitual use constitutes extreme cruelty. When, however, the spouse using the drug is guilty of cruelties and indignities which render the condition of the injured spouse intolerable, ultimately destroying the legitimate ends and objects of matrimony, such acts and conduct persisted in constitute extreme cruelty, although no physical or personal violence may be inflicted, or even threatened or reasonably apprehended. Breene v. Breene, 76 Pa. Sup. Ct. 568.

2. We have no such thing in our practice as an interlocutory decree of divorce. In those jurisdictions where such decree is provided for by statute, it is held that the statutory interlocutory decree in divorce suits is final, except as against such attack as is authorized by statute for the modification or vacating of final judgments. 9 Cal. Jur. 762. Barring, of course, the familiar equitable considerations of fraud or mistake in the procurement of this decree, all matters therein litigated

have passed beyond the possibility of future litigation. Olson v. Superior Court, 175 Cal. 250, 165 P. 706, 1 A. L. R. 1589. This, we take it, is the rule in Rhode Island. Thrift v. Thrift, 30 R. I. 357, 75 A. 484.

3. Ordinarily the operation and effect of a dismissal or discontinuance of a divorce suit carries the whole case out of court and necessarily the interlocutory decree goes out with it. 19 Corpus Juris, 148. The defendant having voluntarily and with leave of court discontinued her petition in the Rhode Island court, upon principle, her contention that the causes of action stated in the complaint are res adjudicata is without merit.

4. Was the plaintiff a resident of Washoe County, domiciled there, when he brought this suit? For the purpose of answering this question, the undisputed facts may be shortly stated. Prior to his coming to Nevada, the plaintiff subjected himself and his marital relation to the laws of his original domicile and to the jurisdiction of its courts. In the course of the proceedings in the Rhode Island court the plaintiff sought to have the Justice of said court enter a final decree divorcing the parties from the bond of marriage. This the supreme court of Rhode Island said could not be done without the consent of the petitioner, who is the defendant here. The petitioner voluntarily discontinued her petition, and within a few days thereafter James McLaughlin left Rhode Island and came to Reno, Washoe County, Nevada, and on the second day after the expiration of six months from the date of his arrival there he commenced this suit for divorce, upon the grounds of cruelty and desertion, alleging residence in Washoe County for the period of six months before the filing of his complaint. It is not denied that the plaintiff came here for a divorce. As a witness in his own behalf, he testified upon the trial that he came to Nevada with the intention of making Reno, Washoe County, his permanent home; that he had no residence other than Reno, and that he had no immediate intention of abandoning that residence. On cross-examination he admitted that he had no property in Nevada, and that he had made no attempt to acquire a business or to engage in one in Nevada.

When asked on cross-examination whether he owned property in Providence, R. I., his original domicile, and whether he had changed his bank account from Rhode Island to Nevada, counsel for plaintiff objected to the questions as being incompetent, irrelevant, and immaterial. The objection was sustained. The defendant did not offer any affirmative evidence negativing the testimony of the plaintiff. This being all the testimony relating to the issue of residence, the court assumed jurisdiction of the subject-matter of the suit and proceeded to hear and determine the case upon its merits.

The record discloses that sufficient exceptions were taken in the court below to bring before us the question of whether the trial judge committed reversible error in sustaining the plaintiff's objections to questions propounded him upon cross-examination to test the good or bad faith of his residence in Nevada for six months before the filing of his complaint. After reviewing the cases in this court and many cases in other jurisdictions, we conclude that, with respect to the evidence necessary to establish domiciliary intention, it is impossible to lay down any positive rule. As remarked in Whelan v. Whelan, 37 Pa. Co. Ct. R. 115, courts of justice must necessarily draw their conclusions from all the circumstances of each case, and each case must vary in its circumstances, and, moreover, in one a fact may be of the greatest importance, but in another the same fact may be so qualified as to be of little weight.

Conceding that the best evidence of intention is to be ascertained from the party's declarations, and that their credibility is a matter for the trial judge to pass upon, yet the rule is well established that evidence of expressed intent has no controlling weight if such intent is inconsistent with the acts and general conduct of the person. While a resident, domiciled here, is entitled to the full benefit of the six months' residence clause of our divorce statute, no sufficient reason exists why in a contested case the plaintiff should not be cross-examined fully with respect to his domiciliary intention. The evidence, sought to be elicited by the questions objected to, might not be conclusive of plaintiff's bad

faith, but when taken in connection with his acts and conduct and all the circumstances surrounding and attending his stay in Nevada it might well be considered as a circumstance tending to show that the plaintiff's residence was not in good faith. The facts that plaintiff owned property in the state of his original domicile, that he was a business man there and kept a checking account in his home bank to pay the expenses incident to his six months' residence in Nevada for a divorce might well be considered in connection with other circumstances to show that his residence in Nevada was merely colorable.

Entertaining these views, we conclude that, under all the circumstances of this case, the trial judge committed reversible error in refusing to permit a full and searching cross-examination of the plaintiff with respect to his domiciliary intention. This conclusion renders it unnecessary to discuss the question of whether the evidence is sufficient to support the complaint.

The order appealed from is reversed, and the cause is remanded for such further proceedings as the parties may be advised.

DUCKER, J.: I concur.

COLEMAN, C. J.: I concur in the order of reversal solely upon the ground that the court erred in sustaining objections to questions asked the plaintiff on cross-examination for the purpose of showing his lack of good faith in establishing a residence in Washoe County, Nevada.

### ON PETITION FOR REHEARING

November 3, 1925.

*Per Curiam:*

Rehearing denied.

### ON COSTS

November 23, 1925.                                    240 Pac. 1115.

*Per Curiam.*

This matter is now before the court on an appeal disallowing the items of cost claimed in the cost bill filed

by the appellant, in whose favor this court decided. Rule vi of this court provides for the filing of a cost bill by the prevailing party, and for the filing of objections thereto by the losing party. Paragraph 3 of the rule provides: "If there be no objections to the costs claimed by the party entitled thereto, they shall be taxed as claimed in his cost bill." No objection was made. This rule is clear and leaves nothing to decide. The ruling of the clerk is overruled, with instructions to allow the cost bill as claimed.